UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN
(SOUTHERN DIVISION)

IN RE:  SHAUN PAUL GOBER,

Debtor,

_____/

File No.   21-00147-jwb

Chapter 7
Honorable James W. Boyd

GSCL, LLC, a Michigan Limited Liability Company,

            Plaintiff,

-v-

SHAUN PAUL GOBER,

        Defendant.

_____/

Adversary Proceeding File No.

## COMPLAINT TO DETERMINE DISCHARGEABLITY OF INDEBTEDNESS

NOW COMES GSCL, LLC, Plaintiff herein by and through its attorney William G. Burdette, Esq. and for its Complaint states as follows:

### JURISDICTIONAL ALLEGATIONS

1.      Plaintiff is a Michigan Limited Liability Company located in the County of Osceola, State of Michigan and doing business in the County of Grand Traverse, State of Michigan.

2.      Defendant is an adult resident of the County of Grand Traverse, State of Michigan.

3.      Defendant has filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code.

4.      This is a core proceeding pursuant to 28 USC 157(b)(2)(E), (H), and (I).

1

## FACTUAL ALLEGATIONS

5.    Plaintiff incorporates by reference its allegations contained in Paragraphs 1-4 of its Complaint as if fully restated herein.

6.    Plaintiff is an unconventional lender, who loans money to persons who cannot for whatever reason obtain conventional financing.

7.    Plaintiff over the course of several years has loaned EETKO BUILDER, LLC (hereinafter referred to as "EETKO") money to finance several construction projects.

8.    EETKO is a single member limited liability company and Defendant is the sole member of EETKO.

9.    Defendant is the managing member of EETKO.

10.    These several oral contracts were negotiated by Defendant on behalf of EETKO.

11.    Pursuant to the parties' contracts after the construction was completed, the projects would be sold and the loans would be paid back to Plaintiff, plus interest.

12.    Pursuant to the parties' contracts during the course of construction, Defendant on behalf of EETKO would contact Plaintiff and request draws for the particular project. After being informed of what the funds were to be used for, Plaintiff would then disburse the funds to EETKO.

13.    During the course of the several projects, Defendant on behalf of EETKO requested draws and represented to Plaintiff that the monies were needed to pay subcontractors, suppliers, and other expenses for the construction of the particular project and that EETKO and Defendant would pay those subcontractors and suppliers with the disbursements obtained. Based on these representations, Plaintiff would disburse the requested funds to Defendant and EETKO.

14.     Plaintiff would not have released the requested funds had it known that they would not be used for the particular project on which the loans were requested by Defendant and EETKO or that they would not be used for the purposes that they were requested that being to pay for the subcontractors, supplies and expenses of the particular project.

15.     Subsequently, EETKO breached the parties' contracts and failed to pay Plaintiff for the several loans made to EETKO.

16.     Plaintiff after questioning Defendant regarding the outstanding balances owed on several loan contracts, he then induced Plaintiff to loan additional money to EETKO by representing that EETKO owned Lot 61 and several other lots in Whispering Pines subdivision and that EETKO will secure the outstanding amounts that are owed to Plaintiff balances on Lot 61.

17.     Pursuant to Defendant's representations, on or about September 26, 2019, Defendant on behalf of EETKO executed a Mortgage and a Promissory Note in the amount of $340,000.00 to secure the amounts owed to Plaintiff on the project located on Lot 61 of Whispering Pines subdivision and for the several other projects in which Plaintiff was owed money by EETKO. A copy of the Promissory Note is attached hereto as **Exhibit "A"** and copy of the Mortgage is attached hereto as **Exhibit "B."**

18.     Pursuant to the Promissory Note, Defendant signed as a personal guaranty.

19.     Thereafter, Plaintiff discovered that Defendant's statements were untrue and that EETKO did not own Lot 61 or any other lot in Whispering Pines subdivision. Rather, Lot 61 was owned by The Rodney M. Bogart Trust.

3

20.     Since EETKO did not own Lot 61, Defendant had no legal right to mortgage said property and therefore, the September 26, 2019 Mortgage was fraudulent.

21.     After discovering Defendant's fraud, Plaintiff contacted Rodney M. Bogart, the trustee of The Rodney M. Bogart Trust, and purchased Lot 61 on April 10, 2019 in an attempt to secure the amounts owed. A copy of the Warranty Deed is attached hereto as **Exhibit "C."**

22.     After purchasing the property, it was discovered that several subcontractors on the project had recorded claims of lien after not being paid by EETKO at the direction of Defendant. The claims of lien are as follows:

      (a)     Leelanau Redi-Mix, Inc. A copy of which is attached hereto as **Exhibit "D."**

      (b)     Keith Willmes and Nicholas Pratt. A copy of which is Claim of Lien is attached hereto as **Exhibit "E."**

      (c)     Mitchell Concrete. A copy of which is attached hereto as **Exhibit "F."**

23.     Plaintiff contends that Defendants kept the money for the Lot 61 project for their own use and/or used the money to pay themselves before paying the subcontractors and suppliers on the project, and/or used the money on EETKO'S other projects.

24.     As a result, Leelanau Redi-Mix, Inc. has filed an action to foreclose its Claim of Lien on Plaintiff's property in Grand Traverse County Circuit Court File No. 2020-35500-CZ.

25.     Plaintiff further contends that on the other projects in which Plaintiff previously lent money to EETKO, Defendant kept that money for his own use and/or used the money to pay himself before paying the subcontractors and suppliers on the projects, and/or used the money on EETKO'S other projects.

26.     Plaintiff contends that EETKO breached the parties' contracts by failing to use the proceeds of the loans for the particular projects, by failing to pay the subcontractors and suppliers on the projects, and by improperly keeping the money for its own use and/or used the money to pay itself before paying the subcontractors and suppliers, and/or used the money on other projects.

27.     Plaintiff further contends that EETKO breached the parties' contracts, by failing to pay the loans back to Plaintiff after the projects were sold.

28.     Plaintiff contends that EETKO breached the Promissory Note by failing to pay the Promissory Note in full, plus interest by November 7, 2019 and as such Defendant is personally liable under the personal guaranty.

## COUNT I

## VIOLATION OF THE BUILDERS TRUST
## FUND ACT, MCL 570.151 *et seq.*

29.     Plaintiff incorporates by reference its allegations contained in Paragraphs 1-28 of its Complaint as if fully restated herein.

30.     Defendant is the managing member of EETKO, which is a limited liability company involved in construction services in the State of Michigan.

31.     EETKO received valuable consideration in connection with the projects that Plaintiff has loaned EETKO money to construct.

32.     EETKO is a contractor engaged in the building industry.

33.     EETKO was lent funds from Plaintiff for the use in the construction of several projects.

34.     Instead of first paying subcontractors and suppliers, EETKO at Defendant's direction improperly kept the money for its and/or Defendant's own use and/or used the money to pay themselves before paying the subcontractors and suppliers, and/or used the money on EETKO'S other projects.

35.     EETKO holds the consideration from any person in connection with the projects it is involved with as trustee for the benefit of Plaintiff and others pursuant to *MCL 570.151* of the Michigan Building Contract Fund Act, *MCL 570.151 et seq*.

36.     Plaintiff contends that Defendant, as the managing member of EETKO, is personally liable for the wrongs of EETKO and for a violation of the Michigan Building Contract Fund Act, *MCL 570.151 et seq*. **People** v **Brown**, *239 Mich App 735; 610 NW2d 234 (2000)*.

37.     Pursuant to *11 USC 523(a)(4)* it provides that an exception to non-dischargability is a debt incurred by the debtor by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

38.     Plaintiff asserts that given Defendant's violation of the Michigan Building Contract Fund Act, *MCL 570.151 et seq*., Plaintiff's claimed amount of $415,000.00 against Defendant cannot be discharged in bankruptcy.

WHEREFORE, Plaintiff requests the Court:

(a)     To declare Plaintiff's allowed claim of $415,000.00 plus accrued interest, costs, and attorney's fees be deemed non-dischargeable; and

(b)     To grant Plaintiff any other relief that the Court deems just and proper.

6

## COUNT III

## FRAUDULENT MISREPRESENTATION

39.     Plaintiff incorporates by reference its allegations contained in Paragraphs 1-38 of its Complaint as if fully restated herein.

40.     Plaintiff is an unconventional lender, who loans money to persons who cannot for whatever reason obtain conventional financing.

41.     Plaintiff over the course of several years has loaned EETKO money to finance several construction projects.

42.     These several oral contracts were negotiated by Defendant on behalf of EETKO.

43.     Pursuant to the parties' contracts after the construction was completed, the projects would be sold and the loans would be paid back to Plaintiff, plus interest.

44.     Pursuant to the parties' contracts during the course of construction, Defendant on behalf of EETKO would contact Plaintiff and request draws for the particular project. After being informed of what the funds were to be used for, Plaintiff would then disburse the funds to EETKO.

45.     During the course of the several projects, Defendant on behalf of EETKO requested draws and represented to Plaintiff that the monies were needed to pay subcontractors, suppliers and other expenses for the construction of the particular project and that EETKO and Defendant would pay those subcontractors and suppliers with the disbursements obtained. Based on these representations, Plaintiff would disburse the requested funds to EETKO and Defendant.

46.     Plaintiff would not have released the requested funds had it known that they would not be used for the particular project on which the loans were requested by Defendant and EETKO or that they would not be used for the purposes that they were requested, that being to pay for the subcontractors, supplies and expenses of the particular project.

47.     Subsequently, it was discovered that Defendant made material misrepresentations to Plaintiff in order to get Plaintiff to disburse the funds and that Defendant did not use the funds for the particular projects at issue.

48.     As a result, a number of claims of lien were recorded on some of the projects.

49.     At the time Defendant made the statements, he knew them to be false and that the statements were made with the intention that Plaintiff would rely on them and disperse the requested funds.

50.     Plaintiff relied on Defendant's false statements to its detriment and released the requested funds to EETKO and Defendant who then failed to use the money on the several projects and used it for their own use.

51.     Plaintiff suffered monetary damages as a result of Defendant's false statements.

52.     Pursuant to *11 USC 523(a)(2)* it provides that an exception to non-discharability is a debt incurred by the debtor by fraud, false pretenses, or false representation.

53.     Pursuant to *11 USC 523(a)(4)* it provides that an exception to non-discharability is a debt incurred by the debtor by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

54.     Plaintiff asserts that given Defendant's fraud, Plaintiff's claimed amount of $415,000.00 against Defendants cannot be discharged in bankruptcy.

8

WHEREFORE, Plaintiff requests the Court:

(c)     To declare Plaintiff's allowed claim of $415,000.00 plus accrued interest, costs, and attorney's fees be deemed non-dischargeable; and

(d)     To grant Plaintiff any other relief that the Court deems just and proper.

## COUNT IV

### FRAUD IN THE INDUCEMENT

55.     Plaintiff incorporates by reference its allegations contained in Paragraphs 1-54 of its Complaint as if fully restated herein.

56.     Plaintiff is an unconventional lender, who loans money to persons who cannot for whatever reason obtain conventional financing.

57.     Plaintiff over the course of several years has loaned EETKO money to finance several construction projects.

58.     These several oral contracts were negotiated by Defendant on behalf of EETKO.

59.     Pursuant to the parties' contracts after the construction was completed, the projects would be sold and the loans would be paid back to Plaintiff, plus interest.

60.     Pursuant to the parties' contracts during the course of construction, Defendant on behalf of EETKO would contact Plaintiff and request draws for the particular project. After being informed of what the funds were to be used for, Plaintiff would then disburse the funds to EETKO.

61.     During the course of the several projects, Defendant on behalf of EETKO requested draws and represented to Plaintiff that the monies were needed to pay subcontractors, suppliers and other expenses for the construction of the particular project and that EETKO and Defendant

would pay those subcontractors and suppliers with the disbursements obtained. Based on these representations, Plaintiff would disburse the requested funds to Defendant and EETKO.

62.    Plaintiff would not have released the requested funds had it known that they would not be used for the particular project on which the loans were requested by Defendant and EETKO or that they would not be used for the purposes that they were requested that being to pay for the subcontractors, supplies and expenses of the particular project.

63.    Subsequently, it was discovered that Defendant made material misrepresentations to Plaintiff in order to induce Plaintiff to disburse the funds and that Defendant did not use the funds for the particular projects at issue.

64.    At the time Defendant made the statements, he knew them to be false and that they were made to induce Plaintiff to release the requested funds.

65.    Plaintiff relied on Defendant's false statements to its detriment and released the requested funds to EETKO and Defendant who then failed to use the money on the several projects and used it for their own use.

66.    Plaintiff would not have disbursed the money to Defendant and EETKO had it known that they were not using the money for the purposes that they stated to Plaintiff.

67.    Plaintiff after questioning Defendant regarding the outstanding balances owed on several loan contracts, he then induced Plaintiff to loan additionally money to EETKO by representing that EETKO owned Lot 61 and several other lots in Whispering Pines subdivision and that EETKO will secure the outstanding balances on Lot 61.

10

68.     Pursuant to Defendant's representations, on or about September 26, 2019, Defendant on behalf of EETKO executed a Mortgage and a Promissory Note in the amount of $340,000.00 to secure the amounts owed to Plaintiff on the project located on Lot 61 of Whispering Pines subdivision and for several other projects in which Plaintiff was owed money on by Defendant EETKO.   A copy of the Promissory Note is attached hereto as **Exhibit "A"** and copy of the Mortgage is attached hereto as **Exhibit "B."**

69.     Plaintiff relied on Defendant's false statements and loaned the additional money to EETKO.

70.     Thereafter, Plaintiff discovered that Defendant's statements were untrue and that D EETKO did not own Lot 61 or any other lots in Whispering Pines subdivision. Rather, Lot 61 was owned by The Rodney M. Bogart Trust.

71.     Since EETKO did not own the property at issue, Defendant had no legal right to mortgage said property and therefore, the September 26, 2019 Mortgage was fraudulent.

72.     After discovering Defendant's fraud, Plaintiff contacted Rodney M. Bogart, the trustee of The Rodney M. Bogart Trust, and purchased Lot 61 on April 10, 2019 in an attempt to secure the amounts owed to Plaintiff. A copy of the Warranty Deed is attached hereto as **Exhibit "C."**

73.     After purchasing the property, it was discovered that several subcontractors on the project had recorded claims of lien after not being paid by EETKO at the direction of Defendant.

74.     Plaintiff relied on Defendant's false statement to its detriment and loaned the additional money to EETKO.

75.     Plaintiff would not have lent the additional money to EETKO had it known that EETKO did not own Lot 61 or any other lot in Whispering Pines subdivision.

76.     Plaintiff suffered damages as a result of Defendant's false statements.

77.     Pursuant to *11 USC 523(a)(2)* it provides that an exception to non-discharability is a debt incurred by the debtor by fraud, false pretenses, or false representation.

78.     Pursuant to *11 USC 523(a)(4)* it provides that an exception to non-discharability is a debt incurred by the debtor by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

79.     Plaintiff asserts that given Defendants' violation of the Michigan Building Contract Fund Act, *MCL 570.151 et seq.*, Plaintiff's claimed amount of $415,000.00 against Defendant cannot be discharged in bankruptcy.

WHEREFORE, Plaintiff requests the Court:

(e)     To declare Plaintiff's allowed claim of $415,000.00 plus accrued interest, costs, and attorney's fees be deemed non-dischargeable; and

(f)     To grant Plaintiff any other relief that the Court deems just and proper.

**THE LAW OFFICE OF WILLIAM G. BURDETTE, PC**

Dated: 4/8/21

William G. Burdette (P49174)
Attorney for GSCL, LLC
13709 SW Bayshore Drive
Traverse City, MI 49684
(231) 995-9100 Ext. 2

**Promissory Note**                                             **Dated: NOVEMBER 7, 2018**

                                                                          9/26/19

**$340,000.00**     *For Value Received*

1.    BORROWER'S PROMISE TO PAY

         In return for a loan received by the undersigned, as Borrower(s), the undersigned
promise to pay **$340,000.00** plus interest to the order of the lender.  The lender is **GSCL, LLC of
P.O. Box 578, Evart, MI 49631**

The undersigned understands that the Lender may transfer this Note.  The Lender or anyone who
takes this Note by transfer and who is entitled to receive payments under this Note is called the
"Note Holder

2.    FEES & INTEREST

         Interest will be charged on the unpaid principal until the full amount of principal has
been paid.  The undersigned will pay the principle sum with interest from date hereof at a rate of
Seven Percent (7%) per annum. The undersigned will also pay a fee of one-half percent (.5%) of
the total amount borrowed for a total cost of **$1,700.00.**  Should loan extend beyond **12 months
from Close of this loan,** the per diem cost will be **$66.11 a day** in addition to the **$1,700.00**
origination and accrued interest, until the balance is paid in full.  The interest rate required by this
Section is the rate the undersigned will pay both before and after any default described in Section 6
(B) of this note.

3.    PAYMENTS

         Notwithstanding anything contained herein to the contrary, the full amount of principal and
any accrued interest shall be due and payable in full on  **November 7, 2019.**

         In the event the Principal Loan Balance is prepaid, in full or in part prior to the due date, the
interest prepaid shall be prorated from the date of the Note to the date of payment, with the prepaid
principle and/or interest prorated and excess principle and/or interest payment credited to the
Borrower.

4.    BORROWER'S RIGHT TO REPAY

         The undersigned has the right to prepay the principal at any time before it is due.
When the undersigned makes the prepayment, the undersigned will tell the Note Holder in writing.
The undersigned may make prepayments without paying any prepayment charge.  If a partial
prepayment is made, there will be no change in the monthly payment date or amount unless the
Note Holder agrees in writing to those changes.

5.    LOAN CHARGES

         If a law, which applies to this loan and which sets maximum loan charges, is finally

Borrowers Initials



Exhibit A

interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from the undersigned which exceeded permitted limits will be refunded. The Note Holder may choose to make this refund by reducing the principal owing under this Note or by making a direct payment. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6.      BORROWER'S FAILURE TO PAY AS REQUIRED

      (A) Late Charge for Overdue Payments

GSCL LLC does not require principle and interest payments monthly during the construction loan. If the Note Holder has not received the full amount of any payments by the due date as stated herein, the undersigned will pay the Note Holder interest on the overdue principal and interest at the rate of five percent (5%) of the overdue installment payment.

      (B) Default

If the undersigned does not pay the amounts set forth on the date due, the undersigned will be in default unless alternate arrangements have been made and documented in writing.

      (C) Notice of Default

If the undersigned is in default, the Note Holder may send the undersigned a written notice stating that if payment is not made by a certain date, the Note Holder may require the undersigned to pay immediately the full amount of principal which has not been paid and all interest that the undersigned owes on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed.

      (D) No Waiver By Note Holder

Even if, at a time of default, the Note Holder does not require immediate payment in full as described above, the Note Holder will still have the right to do so if the undersigned are in default at a later time.

      (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required the undersigned to pay immediately in full as described above, the Note Holder will have the right to be paid back by the undersigned for all of its costs and expenses in enforcing this Note to the extent not prohibited by the applicable law. Those expenses include, for example, reasonable attorney fees.

7.      GIVING OF NOTICES

      Unless applicable law requires a different method, any notice that must be given under this Note will be given by delivering it or by mailing it by first class mail to Borrower at: **3403 Veterans Drive, Traverse City, MI  49684** or at a different address if the undersigned gives the Note Holder notice. Any notice that must be given to the Note Holder under the Note will be given by mailing it by first class mail to the Note Holder at **P.O. Box 578, Evart, MI  49631** or a different address if the undersigned are given notice of that different address.

8.      WAIVERS

      The undersigned and any other person(s) who has obligations under this Note waive

Borrowers Initials _____  _____

the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

9.      GUARANTY
        **SHAUN P. GOBER** unconditionally and absolutely personally guarantees payment due, and all indebtedness under this Note.

10.     UNIFORM SECURED NOTE
        This Note is a uniform instrument with limited variations in some jurisdictions in addition to the protections given to the Note Holder under this Note,

**This Note is being executed pursuant to the terms and conditions of original Note dated November 7, 2018 as original Note is lost.**

In Witness Whereof, this Note is executed on September 24, 2019.

Signed by:

EETKO BUILDERS, LLC, A MICHIGAN
LIMITED LIABILITY COMPANY

BY: SHAUN P. GOBER, MEMBER

Borrowers Initials _____



8 2 8 7 2 4 1
Tx:4164803

2019R-15818
STATE OF MICHIGAN
GRAND TRAVERSE COUNTY
RECORDED 10/07/2019 04:19:23 PM
PEGGY HAINES REGISTER OF DEEDS
PAGE 1 OF 6

# REAL ESTATE MORTGAGE

Words or phrases preceded by a ⊓ are only applicable if the ⊓ is marked.

This mortgage is made on the date noted below between the parties listed below. The Mortgage is to receive or has received as consideration the benefit of the maximum principal amount shown below from the Lender, receipt of which benefit is acknowledged, mortgages and warrants to the Lender, its successors and assigns, forever, the land and property located and described as noted below, together with all interest in the property, a right, privilege, or improvement belonging to and passable with the property, easements and rights of way of the property, and all buildings and fixtures, all of which is referred to in this Mortgage as the "Property". Mortgagor covenants that Mortgagor is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

| Name(s) Address(es) / Count of Mortgagor | Name / Address / County of Lender |
|---|---|
| EETKO BUILDERS, LLC, A MICHIGAN LIMITED LIABILITY COMPANY<br>3403 VETERANS DRIVE<br>TRAVERSE CITY, MI 49684 | GSCL, LLC<br>P.O. BOX 578<br>EVART, MI 49631 |

| Mortgage Date | Office |
|---|---|
| 9/26/2019 | GSCL, LLC, P.O. Box 578, Evart, MI 49631 |

This mortgage is being executed pursuant to the terms and conditions of original unrecorded mortgage dated 11/07/2018 to put on record.

Property Description

Land situated in the Township of Paradise, County of Grand Traverse, State of Michigan, more fully described as:

Lot 61, Whispering Pines No. 3, according to the recorded plat thereof, as recorded in Liber 15 of Plats, page 5.

S.D.

Exhibit B

Grand Traverse County Register of Deeds

Commonly known as: 1412 Killdeer Lane, Kingsley, MI 49649
Permanent Property No. 28-42-106-061-00

This mortgage is to secure a ⊓ NOTE        XXGUARANTEE    Dated 9 / 26 / 2019
MAXIMUM PRINCIPAL AMOUNT (excluding protective advances)

THREE HUNDRED FORTY THOUSAND ONE HUNDRED AND NO DOLLARS AND 00/100 ----------
$340,000.00

Mortgagor hereby does covenant, promise and agree with Lender, its successors and assigns, as follows:

1. Indebtedness. This Mortgage secures the repayment of any and all debt of Mortgagor to Lender however created, whether presently owned, now created or incurred in the form of future advance. Debt may be evidenced by a note, loan agreement, or any other form of evidence of debt. Debt may also be the result of the guarantee of Mortgagor given to support debt owed to Lender by another person or entity. Any debt secured by the Mortgage which is extended or renewed remains secured. All debt secured by this Mortgage is referred to as "Indebtedness" in this Mortgage. Indebtedness further includes any interest on debt as called for in any evidence of debt document whether direct between Mortgagor and Lender or between Lender and another person or entity supported by the guaranty of Mortgagor. This Mortgage also secures the performance of the covenants, promises, and agreements of Mortgagor made in relation to this Mortgage, any evidence of debt document, or guaranty. It is the express intent of the parties to cross-collateralize all of Mortgagor's indebtedness, however arising and whenever incurred except as otherwise provided for in this Mortgage.

2. Consumer Credit. Notwithstanding anything to the contrary in any provision of the Mortgage, indebtedness which occurs because of a consumer credit transaction will not be secured hereby unless this Mortgage is specifically referenced as securing such Indebtedness, in which case such indebtedness shall be a part of the Indebtedness secured hereby. A consumer credit transaction is one where the proceeds are represented by the borrower as being for a personal, family or household use.

3. Escrow Requirements. At the request of the Lender and subject to applicable law, Mortgage will be required to make monthly payments to Lender at the same time as installments of principal and/or interest are payable or as otherwise requested by Lender, an amount that Lender from time to time estimates as necessary to create and maintain a reserve which would be sufficient to pay all taxes, assessments, liens and charges or insurance premiums due on or charged against the Property, hereafter referred to as "Escrow." The amount of the Escrow may not exceed the maximum amount Lender may require under applicable Federal Real Estate Settlement Procedures Act of 1974 requirements, or other applicable law. The Escrow shall be held in any federally insured institution or in any Federal Home Loan Bank. Lender may not charge Mortgagor, other than a one-time charge to a tax reporting service if permitted by law, for holding or servicing Escrow unless Mortgagor is paid interest on the Escrow, if permitted by law. Lender is not required to pay Mortgagor any interest or earnings on the Escrow unless agreed to in writing or required by law. Lender shall provide Mortgagor an annual accounting of the Escrow as required by law. If the amount of the Escrow paid to Lender, together with the future monthly payments of Escrow shall be insufficient to pay taxes, assessments, liens and charges and insurance premiums before they are due, the Mortgagor shall, upon written notice, pay to Lender such additional amounts necessary so that Lender may make such payments. If the amount of the Escrow shall exceed the amount permitted to be held by law, Lender shall account to Mortgagor for the excess Escrow in accordance with applicable law. If the Escrow is not sufficient to pay Escrow items when due, Lender may so notify Mortgagor and, at Lender's sole option, require Mortgagor to make up the deficiency. Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Mortgagor any Escrow held by Lender.

Upon any default under the Mortgage, Lender may apply any excess Escrow funds created hereunder to any Indebtedness then due.

4. **Charges; Liens.** As long as any part of the Indebtedness secured by this Mortgage remains unpaid, Mortgagor agrees to: (a) promptly remove from said Property all statutory lien claims; (b) protect the title and possessions of said Property; (c) pay when due all taxes, assessments, liens and charges and insurance premiums on or against the Property. Mortgagor shall make such payment in the manner specified in Paragraph 3 above or if those provisions in Paragraph 3 are not applicable, directly to the person or entity owed the payment. Mortgagor will furnish to Lender the official receipts as evidence of such payments promptly upon Lender's request.

5. **Hazard Insurance.** Mortgagor shall keep the Property insured against loss and damage by fire and perils covered by extended coverage insurance, including public liability insurance and against such other risks and in such amounts, as may from time to time be required by Lender, with such insurer(s) as may from time to time be acceptable and approved by Lender, with the proceeds thereof payable to Lender under standard mortgagee endorsement thereto, and such policy(ies) shall contain an agreement by such insurer(s) that the policy(ies) shall not be cancelled or materially changed without at least thirty (30) days prior written notice to Lender. If the Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and flood hazard insurance is available for such area under the National Flood Insurance Act of 1968, as amended, the Mortgagor shall keep the Property covered by flood insurance up to the maximum limit of coverage available under the Act, but not in excess of the amount of the indebtedness. The policies for all such insurance and renewals thereof, together with receipts evidencing payments of the premiums thereon, shall be delivered promptly to Lender. Lender is authorized to adjust and compromise such loss, without the consent of Mortgagor, to collect, receive and receipt for such insurance proceeds in the name of Lender and Mortgagor and to endorse Mortgagor's name upon any check for payment thereof. Any sum paid under any such policy may be applied by Lender, at its option, to reduce the Indebtedness, to repair or replace the improvements covered by said policy, or to fulfill any of the covenants contained herein, as Lender may determine. In case of any sale under foreclosure hereof, all such insurance shall thereafter and until the period of redemption express, be made payable to the holder of the Sheriff's Deed; and in such event Lender is hereby authorized to collect the unearned premium on any such policy it may cause to be cancelled and apply such premiums toward the payment of premium on any such new insurance so payable to the holder of such Sheriff's Deed. Mortgagor hereby irrevocably appoints Lender its attorney-in-fact, in Mortgagor's name, to assign and transfer all such policies and proceeds to such foreclosure sale purchaser.

6. **Preservation of Maintenance of Property.** Mortgagor shall not damage, destroy or substantially change the Property, allow the Property to deteriorate or commit waste and shall promptly comply with all present and future statutes, ordinances, regulations, rules and requirements of any governmental agency which may govern the Property.

7. **Protection of Lender's Security.** If the Mortgagor shall neglect or refuse to keep the Property in good repair and condition, to promptly pay when due all taxes, assessments, liens and charges on or against the Property or to remove any statutory lien on said Property, or to keep the Property insured as herein promised and deliver the policy or policies of insurance or the renewals thereof to Lender, then Lender may, at its option, make repairs, pay such taxes, assessments, liens and charges on or against Property with all accrued interest, penalties, fees, and expenses thereon, and any such protective advances paid by Lender hereunder shall become part of the Indebtedness of Mortgagor secured by this Mortgage. Unless agreed to otherwise by Lender, such amounts shall bear interest from actual date of disbursement at the highest rate allowed by law and shall be immediately payable to Lender upon written request.

8. **Inspection.** Lender shall have the right at any time to enter upon the Property for purposes of inspecting Property and to ensure that the covenants, promises and agreements herein agreed to by the Mortgagor are being complied with.

9. **Condemnation.** In the event damages are paid or awarded for the taking of or injury to all or any part of the Property, whether by condemnation, eminent domain or otherwise, any and all such payments or awards shall be paid to the Lender and applied, at the option of Lender, towards the Indebtedness owed under the Mortgage whether or not then due and any excess that remains shall be remitted to the party or parties entitled thereto.

10. **Notices.** All notices required under this Mortgage shall be in writing and shall be deemed to have been properly given or sent if either delivered personally or sent by mail, postage prepaid, to Mortgagor at the Property Address

3

indicated herein or at a different address if Mortgagor gives Lender a notice of a different address, unless applicable law requires a different method.

Notice(s) that must be given to the Lender will be given by mailing it by first class mail to the Lender at the address stated in this Mortgage or at a different address if Mortgagor has been given notice of that different address.

11. **Successors and Assigns Bound.** It is agreed that all the terms, conditions, covenants and agreements contained herein shall be binding upon and inure to each of the parties hereto, their respective successors, assigns and legal representatives.

12. **Transfer of Property; Assumption.** If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all Indebtedness secured by this Mortgage.

If Lender exercises the option to require immediate payment in full, Lender shall give Mortgagor notice of acceleration. The notice shall provide a period of net less than 10 days from the date the notice is delivered or mailed written which Mortgagor must pay all sums secured by this Mortgage. If Mortgagor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on the Mortgagor.

13. **Maximum Loan Charges.** If a law, which applies to the indebtedness secured by the Mortgage and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Indebtedness exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Mortgagor which exceed permitted limits will be refunded to Mortgagor if required by law. The Lender has the option of making this refund by reducing the Indebtedness owed or by making a direct payment to Mortgagor. If a refund reduces the Indebtedness, the reduction will be treated as a partial prepayment.

14. **Default.** Each of the following events shall constitute a default under this Mortgage, unless otherwise elected by Lender, in its sole discretion (a) any failure to pay any interest or principal upon the Indebtedness when due; (b) the failure to keep or perform any of the covenants, promises or agreements of this Mortgage or any other agreement, oral or written, out of which the indebtedness arises or which governs any of the terms of the Indebtedness; (c) the insolvency of the Mortgagor under any legal definition; (d) the filing by or against the Mortgagor of any insolvency, bankruptcy or receivership proceeding; (3) any assignment by the Mortgagor for the benefit of the Mortgagor's creditors; (f) the death of the Mortgagor; (g) any sale or transfer by Mortgagor of any interest in the Property, whether by deed, land contract, contract of sale, or the like; (h) the filing of any judgment or tax lien against Mortgagor or any attachment or garnishment issued against any of Mortgagor's properties or rights; (i) the Lender n good faith believes the Mortgagor's ability to repay the Mortgagor's indebtedness under this Mortgage, any collateral, or the Lender's ability to resort to any collateral, is or soon will be impaired, time being of the very essence.

Upon the occurrence of any event of default, the Lender may, without notice unless required by law, and at its option, declare the entire indebtedness secured hereby to be immediately due and payable.

15. **Lender's Remedies.** In the event of default, the Lender may, without notice unless required by law, and at its option, declare the entire indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to sell or to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute and in such case made and provided, and out of the proceeds of the sale to retain the sums equal to the Indebtedness then due thereunder and all costs and charges of the sale, including attorney fees, rendering any surplus monies to the party or parties entitled to the excess. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of the Lender, be made en masse. The commencement of proceedings to foreclose this Mortgage in any manner authorized by law shall be deemed as exercise of the above option. In the event of default or the commission of waste, the Lender shall forthwith be entitled to the appointment of a receiver of the Property and of the earnings, income, issue, and profits thereof, with such powers as the court making such appointments shall confer. The Mortgagor hereby irrevocably

4

consents to such appointment and waives notice of any application therefore.  IN THE EVENT OF THE SALE OF THE PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A MORTGAGE BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIALHEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.  If permitted by law, Mortgager waives any otherwise required notice of: presentment; domain; acceleration; and intent to accelerate.

16.  **Cross Default.**  The Mortgagor expressly acknowledges that it is the intent of Mortgagor and Lender that a default in any of the provisions of this Mortgage shall constitute a default in any other agreement which may now exist or hereafter arise between them, and that, likewise, a breach of any such other agreement shall constitute a breach and default of this Mortgage.

17.  **Forbearance Not a Waiver.**  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

18.  **Waiver of Homestead and Exemption Law.**  The Mortgagor hereby waives and releases all rights under any homestead and exemption law, and relinquishes all right of courtesy and dower, that might otherwise affect the real property being mortgaged hereunder.

19.  **Headings.**  The headings preceding text in this Mortgage are for the Mortgagor's general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading.

20.  **Governing Law.**  This Mortgage is governed by the laws of the state in which Lender has its main office except to the extent that federal law is controlling.  If any provision of this Mortgage shall be prohibited by law, such prohibitions shall apply only to that provision and all of the other provisions of the Mortgage shall remain in full force and effect.

Additional provisions:
Deletions (All parties must initial or sign):

### Signature(s)

IN WITNESS WHEREOF, said Mortgagor has executed this Mortgage the day and year first noted above.

EETKO BUILDERS, LLC, A MICHIGAN LIMITED
LIABILITY COMPANY

BY: SHAUN P. GOBER, MEMBER

5

STATE OF MICHIGAN
COUNTY OF GRAND TRAVERSE

The foregoing instrument was acknowledged before me this _26th_ day of
_September_____, 2019 By Shaun P. Gober, Member of EETKO Builders, LLC, a
Michigan Limited Liability Company

NOTARY PUBLIC
FOR THE COUNTY OF
ACTING IN THE COUNTY OF:                    MICHIGAN
MY COMMISSION EXPIRES:
                              SABRINA K. DUSSEAU
                       NOTARY PUBLIC - STATE OF MICHIGAN
                          COUNTY OF GRAND TRAVERSE
                       My Commission Expires 08-26-2026
                       Acting in the County of _Grand Traverse_

When Recorded Return to:              Drafted By/Address:
Gerald Selbee                         Gerald Selbee
GSCL, LLC                             GSCL, LLC
P.O. Box 578                          P.O. Box 578
EVART, MI 49631                       EVART, MI 49631

6

Grand Traverse County Register of Deeds, 2019R-15818, Part 6



STATE OF MICHIGAN
GRAND TRAVERSE CO
04/30/2020
2020R-07523

REAL ESTATE
TRANSFER TAX
31.35  CO
213.75  ST
TTX #  4176245

ERECORDING
2020R-07523
STATE OF MICHIGAN
GRAND TRAVERSE COUNTY
RECORDED 04/30/2020 11:54:07 AM
PEGGY HAINES REGISTER OF DEEDS
PAGE 1 OF 2

28-42-106-061-00

Reviewed by Grand Traverse GIS by: MB

I HEREBY CERTIFY that there are no TAX LIENS or TITLES
held by the state or any individual against the within description, and
all TAXES on same are paid for five years previous to the date of this
instrument as appears by the records of this office, except as stated.
Heidi Scheppe, Grand Traverse County Treasurer
Sec.135, Act 206, 1893 as amended    4/30/2020 by: SG

## WARRANTY DEED

Grand Traverse County Register of Deeds
eRecord Received: 4/30/2020 09:42 AM By: TB

The Grantor:      RODNEY M. BOGART, TRUSTEE OF THE RODNEY M. BOGART TRUST,
DATED DECEMBER 14, 2006 AND BARBARA L. BOGART, TRUSTEE OF THE
BARBARA L. BOGART TRUST, DATED DECEMBER 14, 2006
621 Fenton St.
Kingsley, MI  49649

conveys and warrants to:   GSCL, LLC
P.O. Box 578
Evart, MI  49631

the following described premises situated in the Village of Kingsley, County of Grand Traverse, Michigan:

Lot No. 61, Whispering Pines No. 3, according to the Recorded Plat thereof, as recorded in Liber 15 of
Plats, on Page 40.

The Grantor(s) grants to the Grantee(s) the right to make all division(s) under the Michigan Land Division Act,
being Public Act 288 of 1967, as amended by Section 108 of Public Act 591 of 1996.

This property may be located within the vicinity of farmland or a farm operation.  Generally accepted
agricultural and management practices which may generate noise, dust, odors, and other associated
conditions may be used and are protected by the Michigan Right to Farm Act.

THE CERTIFICATE OF TRUSTS WERE PREVIOUSLY RECORDED AS DOCUMENT NO. 2020R-06285
AND 2020R-06286.

for the sum of TWENTY-EIGHT THOUSAND FIVE HUNDRED and 00/100 ($28,500.00)

subject to easements and building and use restrictions of record and further subject to all prior reservations
including all prior oil, gas and other minerals and further subject to all local and state statutes, ordinances and
laws.

Dated this 10th day of April, 2020



Exhibit C

Grand Traverse County Register of Deeds  2020R

THE RODNEY M. BOGART TRUST DATED
DECEMBER 14, 2006

_Rodney M Bogart_

BY: RODNEY M. BOGART, TRUSTEE

THE BARBARA L. BOGART TRUST DATED
DECEMBER 14, 2006

_Barbara L Bogart_

BY: BARBARA L. BOGART, TRUSTEE

STATE OF Florida )
COUNTY OF Highlands )ss
)

The foregoing instrument was acknowledged before me this 10th day of April , 2020, by
RODNEY M. BOGART, TRUSTEE OF THE RODNEY M. BOGART TRUST, DATED DECEMBER 14,
2006 AND BARBARA L. BOGART, TRUSTEE OF THE BARBARA L. BOGART TRUST, DATED
DECEMBER 14, 2006

_Misty Ruelas_

State of Florida , County of Highlands , Notary Public
My Commission Expires: Aug 19, 2023
Acting in the County of

When recorded return to:  Grantees

Drafted WITHOUT OPINION By:   James R. White
WHITE LAW OFFICE, P.L.C.
P.O. Box 973
Evart, MI 49631

MISTY L. RUELAS
Notary Public, State of Florida
My Comm. Expires Aug. 19, 2023
Commission # GG 387426

Grand Traverse County Register of Deeds



## CLAIM OF LIEN

NOTICE IS HEREBY GIVEN that on DATE 3/11/19, LEELANAU REDI-MIX, INC., a Michigan corporation, ADDRESS  first provided labor or material for an improvement to: Land situated in *Paradise* Township, County, Michigan, , ADDRESS more particularly described as: 1712 Kildeer Lane, Kingsley, MI 49649

Legal description  Lot 61, Whispering Pines #5 Subdivision

The owner of which property is Rodney W. Bryant     (Trust) , husband and wife. The last day of providing the labor or material was  DATE 9/10/19  Barbara a. Bryant     (Trustees)

TO BE COMPLETED BY A LIEN CLAIMANT WHO IS A CONTRACTOR, SUBCONTRACTOR, OR SUPPLIER:

The lien claimant's contract amount, including extras, is $ 12,856.7 . The lien claimant has received payment thereon in the total amount of $ —0— , and therefore claims a construction lien upon the above-described real property in the amount of $ 12,856.07 .

LEELANAU REDI-MIX, INC., a Michigan corporation,

Dated: September 30, 2019

By: *[signature]*
Robert Flaska, CFO
Address: 12488 S. Newman Road, Maple City, MI 49664
Telephone No.:  (231) 228-5041

STATE OF MICHIGAN

Leelanau COUNTY ) SS
)

Subscribed and sworn to before me this 30 day of September 2019.

Prepared by:
Robert Flaska
12488 S. Newman Rd
Maple City, MI     49664

Recording Fees:  $30.00

*[signature]* Emily Paxton
Emily Paxton , Notary Public
Leelanau County, Michigan
Acting in  Leelanau  County, Michigan
My Commission Expires:  1/28/2024

EMILY PAXTON
NOTARY PUBLIC
COUNTY OF LEELANAU
My Commission Expires
January 28, 2024
Acting in the County of
Leelanau
STATE OF MICHIGAN

Exhibit D

1412 Killdeer Lane, Kingsley, MI 49649

parcel TAX ID # 28-42-106-061-00

Paradise Township

LEGAL DESCRIPTION:  Lot 61, Whispering Pines #3 Subdivision



Tx:4164446

2019R-15409
STATE OF MICHIGAN
GRAND TRAVERSE COUNTY
RECORDED 10/02/2019 08:31:51 AM
PEGGY HAINES REGISTER OF DEEDS
PAGE 1 OF 1

CLAIM OF LIEN

NOTICE IS HEREBY GIVEN that on the __2nd__ of __October__, 20_19_ _Keith Willmes, 31 Potter Rd. Traverse_
(date)                                          (name & address of lien claimant)
_City MI. 49696 and Nicholas Pratt, 951 Lake_ first provided labor or material for an improvement to:
_George trl., traverse city_ (insert /attach legal description)

_Lot #61 Whispering pines, NO.3 sec.8 T25N R10W_

The owner/lessee of which is _EETKO Builders LLC._
(name of Owner or Lessee from Notice of Commencement)

The last day of providing labor or material was _8-16-2019_
(date)

Contractors, Subcontractors, or Suppliers:
The lien claimant's amount, including extras or change orders is $ _8,500.00_. The lien claimant has received
payment thereon in the total of $ _O_ and therefore claims a construction lien upon the above
described real property in the amount of $ _8,500.00_

Laborers:
The lien claimant's hourly rate, including fringe benefits and withholding is $_____. There is due and owing
to or on behalf of the laborer the sum of $_____ for which the laborer claims a construction lien upon the
above described real property.

_10-2-2019_ By_____
(date)        (Signature, capacity, printed name, company name of claimant)

_Keith Willmes_
_Nicholas Pratt_

STATE OF MICHIGAN

COUNTY OF _Grand Traverse_

Subscribed and sworn to before me this _2nd_ day of _October_ 20 _19_
by _Keith Willmes & Nicholas Pratt_
(claimant printed name)

Notary Public
State of Michigan, County of _Grand Traverse_
Acting in _Grand Traverse_
My commission expires _6-7-2025_

Prepared by:
_Keith Willmes_
_31 Potter Rd._
_Traverse City MI._

Joan Attwood
Notary Public, State of Michigan
County of _____
My Commission

ClaimOfLien 2017

Exhibit E

Grand Traverse County Regist-



TX:4168579

2019R-20254
STATE OF MICHIGAN
GRAND TRAVERSE COUNTY
RECORDED 12/16/2019 11:19:44 AM
PEGGY HAINES REGISTER OF DEEDS
PAGE 1 OF 1

## CLAIM OF LIEN

NOTICE IS HEREBY GIVEN that on the _2nd_ of _October_, 20_19_
_Mitchell Concrete_
_(date)_
_2450 W Center Rd_                first provided labor or material for an improvement to:
_Kingsley, MI 49649_          _(name & address of lien claimant)_
_(insert /attach legal description )_

_Whispering Pines NO.3_
_according to the recorded plat_
_thereof as recorded in Liber 15 of_
_Plats, page 40 + 41, Lots 61_

The owner/lessee of which is _FETKO Builders, Shaun Gober_
_(name of Owner or Lessee from Notice of Commencement)_

The last day of providing labor or material was _10/2/19_
_(date)_

**Contractors, Subcontractors, or Suppliers:**
The lien claimant's amount, including extras or change orders is $_6,627.50_. The lien claimant has received
payment thereon in the total of $_____0_____ and therefore claims a construction lien upon the above
described real property in the amount of $_6,627.50_

**Laborers:**
The lien claimant's hourly rate, including fringe benefits and withholding is $_____. There is due and owing
to or on behalf of the laborer the sum of $_____ for which the laborer claims a construction lien upon the
above described real property.

_12-16-19_   By _[signature]_           _Mitchell Concrete   owner_
_(date)_      _(Signature, capacity, printed name, company name of claimant)_

_[signature]_              _William Joseph Mitchell_

STATE OF MICHIGAN
COUNTY OF _Grand Traverse_

Subscribed and sworn to before me this _16th_ day of _December_            20_19_
by _William Joseph Mitchell_
_(claimant printed name)_

_Cymantha Kostecki_
_____
Notary Public
State of Michigan, County of _____ CYMANTHA KOSTECKI
Acting in _____  Notary Public, State of Michigan
My commission expires _My Commission Expires 04/26/2020_   County of Grand Traverse

Prepared by:
_Bill Mitchell_
_2450 W Center Rd_
_Kingsley_

ClaimOfLien 2017

Exhibit F